IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CERTIFIED ENTERPRISES, LLC,       )
and JERRY FAULK,

                                       )

       Plaintiffs,

vs.                               )

DAUPHIN CREEK APARTMENTS, LLC,   ) Civil Action No. 09-00163-CG-N
FOUNTAINBLEAU MANAGEMENT
SERVICES, LLC C/O GINGER HARDIN,   )
ROLAND VAUGHN, AMY KENNEDY,
NORMA JONES, AND OCTAVIA THOMAS,   )

                                       )

       Defendants.

REPORT AND RECOMMENDATION

       This matter is before the Court on plaintiffs' motion to remand and brief in support (docs.

14, 15); defendants' response in opposition (doc. 26); plaintiffs' reply (doc. 28) and defendants'

sur-reply (doc. 39).  This matter has been referred to the undersigned Magistrate Judge for a

report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Upon consideration, it is the

recommendation of the undersigned that plaintiffs' motion to remand be GRANTED.

I.      Procedural History

       Plaintiffs' filed their complaint in the Circuit Court of Mobile County Alabama, alleging,

in sum, that they were wrongfully removed from possession of premises in which they had a

valid lease.   While the case was pending in the Circuit Court of Mobile County, plaintiffs filed

an Application for Temporary Restraining Order to Recover Property, along with an Application

for Preliminary Injunction. (docs. 1-8; 1-9; 4; and 5).  On March 26, 2009 defendants removed

the case to this court pursuant to 28 U.S.C. § 1331, on the theories that the state-law claims in the complaint raise substantial questions of federal law and/or that federal law completely preempts the state law claims. (doc. 1).  Specifically, defendants maintain that a resolution to this action requires interpretation of the Multi-Family Mortgage Foreclosure Act ("MMFA")[1] and thus a "substantial question of federal law."  Additionally, defendants argue that the MMFA completely preempts any state law relief sought by plaintiffs in their complaint.

On March 27, 2009, Chief Judge Granade denied plaintiffs' TRO application holding that "the material before the court does not clearly show an immediate and irreparable injury, loss, or damage will result to the plaintiffs before the defendants can be heard." (doc.  8.) On April 2, 2009, after conducting a hearing, Judge Granade orally denied plaintiffs' motion for preliminary injunction on the grounds that plaintiffs did not establish irreparable harm and that there was no substantial likelihood of success on the merits. (doc. 16)

On April 2, 2009,  plaintiffs filed the instant motion to remand on the grounds, in sum, that the complaint does not state a federal question, that complete preemption is not applicable, and the complaint alleges claims against defendants "arising solely under Alabama State Law. " Specifically, plaintiffs argue that the MMFA is not referenced in the complaint and the statute's only relationship to the facts at issue hinges on the fact that one of the defendants purchased the property through a HUD foreclosure.

Plaintiffs filed an amended complaint on May 11, 2009.  (doc. 32)  The amended

---

[1]  The Multifamily Mortgage Foreclosure Act applies only to HUD multifamily mortgages.  "The purpose of [the Multifamily Mortgage Foreclosure Act] is to create a uniform Federal foreclosure remedy for multifamily mortgages."  12 U.S.C. § 3701 (b).  In 1994, Congress extended this uniform foreclosure law to include HUD single family home mortgages by enacting the Single Family Mortgage Foreclosure Act.  12 U.S.C. § 3751 *et seq.*

complaint includes claims alleging the following state law claims:  trespass (Count One), conversion of personal property (Count Two), interference with prospective advantage and contract (Count Three), negligence (Count Four), wantonness (Count Five), negligent supervision (Count Six), injunction (Count Seven), and abuse of process (Count Eight).

The motion to remand has been fully briefed and is now ripe for the court's consideration.

II.     Factual Background

1.     On April 23, 2003, plaintiff, Certified Enterprises, L.L.C., ("Certified") executed a lease with Southern Trace Holding Company, LLC ("Southern Trace"), an entity that is not a party to this lawsuit, for a property located at 1040 Dauphin Island Parkway in Mobile Alabama. (doc. 1-7, ¶ 7).  Certified then operated under the lease agreement by running a rental business (Garden Park Apartments) on the property.

2.     On April 23, 2003 Certified subleased a rental unit on the property to plaintiff Jerry Faulk, an employee of Certified.  (Id.).

3.     After executing the leases, Southern Trace executed a mortgage which was insured by the Department of Housing and Urban Development ("HUD").  Thereafter, Southern Trace defaulted on the mortgage which was later foreclosed upon by HUD. (Id.).[2]

4.     On January 30, 2009, Fountainbleau Management Services, LLC, submitted the winning bid for the property at HUD's foreclosure sale.  Fountainbleau then assigned its purchase rights to defendant, Dauphin Creek Apartments L.L.C.  Dauphin Creek currently owns

_____

[2] It is undisputed that the foreclosure was a HUD foreclosure.  It is further undisputed that neither of the plaintiffs was a party to the foreclosure.

3

the subject property which is managed by Fountainbleau.

5.     On March 10, 2009, the defendants instructed the plaintiffs to vacate the premises.  Plaintiffs allege that in so doing defendants threatened criminal action and violated various legal obligations. (docs. 1-7, ¶¶ 7 and 8).

III.    Standard of Review

28 U.S.C. § 1331 provides federal district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[3]  A defendant may remove a case to federal court only if the district court would have had jurisdiction over the case had the case been brought there originally.  28 U.S.C. § 1441.  The existence  of federal jurisdiction is tested at the time of removal.  Whitt v. Sherman Int'l Corp., 147 F.3d 1325, 1332 (11th Cir.1998); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000) (Jurisdictional facts supporting removal are judged at the time of the removal.)  Thus, in determining whether jurisdiction exists under 28 U.S.C. § 1331, a court must look to the well-pleaded complaint alone.  Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908).  " 'A suggestion of one party, that the other will or may set up a claim under the Constitution or laws of the United States, does not make the suit one arising under that Constitution or those laws.' " Id., 211 U.S. at 153 (quoting Tennessee v. Union & Planters' Bank, 152 U.S. 454, 464 (1894)).

On a motion to remand, the party seeking removal bears the burden of establishing federal court jurisdiction by a preponderance of evidence.  Diaz v. Sheppard, 85 F.3d 1502, 1505

---

[3] Federal question jurisdiction is the only basis asserted for removal.  There is not complete diversity between the parties.  Faulk and several of defendants are Alabama citizens.

(11th Cir.1996); <u>Leonard v. Enterprise Rent a Car</u>, 279 F.3d 967, 972 (11th Cir.2002)("A removing defendant bears the burden of proving proper federal jurisdiction.") To meet this burden, the removing party must show that the complaint, as it existed at the time of removal, provides an adequate basis for the exercise of federal jurisdiction. <u>Id</u>.

Removal statutes are to be strictly construed against removal and all doubts concerning jurisdiction should be resolved in favor of remand. <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1095 (11th Cir.1994) ("removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand"); <u>Whitt v. Sherman Int'l Corp.</u>, 147 F.3d 1325, 1333 (11th Cir.1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); <u>Jerido v. American General Life and Accident Insurance Company</u>, 127 F.Supp. 2d 1322, 1324 (M. D. Ala. 2001) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear."); <u>Newman v. Spectrum Stores, Inc.</u>, 109 F.Supp.2d 1342, 1345 (M. D. Ala. 2000) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").  "However, when a plaintiff has pled only state law causes of action, he may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law, or (2) federal law completely preempts his state-law claims." <u>Dunlap v. G&L Holding Group, Inc.</u>, 381 F.3d 1285, 1290 (11th Cir. 2004)

With this legal framework in mind, the court now turns to the specific grounds of plaintiffs' remand motion.

IV.   <u>Discussion</u>

Plaintiffs' complaint alleges that in taking possession of the property, defendants threatened plaintiffs with criminal arrest to gain an advantage in a civil matter and "converted" plaintiffs' personal property, including a computer which plaintiffs' allege was compromised. Plaintiffs also allege that the defendants committed numerous other civil wrongs in tortiously ejecting plaintiffs from the property without legal process. [4]  Defendants oppose remand on the grounds that plaintiffs' state-law claims raise substantial questions of federal law and that the MultiFamily Mortgage Foreclosure Act ("MMFA") completely preempts the state-law claims.

*Substantial Questions of Federal Law*

Defendants acknowledge that plaintiffs have pled only state law claims but argue that removal is proper because the complaint raises substantial questions of federal law under the MMFA and  "necessarily questions the validity of the January 30, 2009 foreclosure sale and subsequent conveyance of the foreclosure property on March 9th, 2009, as well as a litany of HUD regulations." (doc. 26 at pp. 9-10) Specifically, defendants argue that the resolution of the complaint turns on whether plaintiffs had and/or have a legal right to possess the property, and whether Dauphin Creek is obligated to recognize the leases.  As such, defendants argue that the application and interpretation of the MMFA, 12 U.S.C. § 3713(c)[5], not state law, is necessary to

---

[4]  Plaintiff concedes that Certified Enterprises, LLC shares common owners with Southern Trace Holdings, LLC, (the foreclosed upon mortgagor), but contends that it is a separate corporate entity and neither Certified Enterprises, LLC nor Jerry Faulk were parties to the mortgage or its subsequent foreclosure.  There is no evidence before the court to the contrary.

[5]  12 U.S.C. § 3713, entitled "Transfer of title and possession" provides, in pertinent part:

A purchaser at a foreclosure sale held pursuant to this chapter shall be entitled to
possession upon passage of title to the mortgaged property, subject to an interest
or interests senior to that of the mortgage and subject to the terms of any lease of

determine whether plaintiffs have a superior interest to the property subsequent to the foreclosure. (doc. 26 at pp. 14-15)

In Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005)[6], the United States Supreme Court articulated the following test for determining whether a state-law cause of action gives rise to federal jurisdiction:  "[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities [?]" Id. at 314.   In concluding that the plaintiff's quiet title claim fell within the court's jurisdiction, the Court reasoned that "[t]he meaning of the [disputed] federal tax provision [was] an important issue of federal law that sensibly belong[ed] in federal court," and the exercise of federal jurisdiction would "portend only a microscopic effect on the federal-state division of labor." Id. at 315.[7]

In 2006 the Supreme Court elaborated upon its decision in  Grable, explaining that the

---

a residential tenant for the remaining term of the lease or for one year, whichever period is shorter. Any other person remaining in possession after the sale and any residential tenant remaining in possession after the applicable period shall be deemed a tenant at sufferance.

12 U.S.C. § 3713 (c).

[6]  In Grable, the IRS seized real property owned by the plaintiff to satisfy a federal tax delinquency and sold the property to the defendant. 545 U.S. at 310. The plaintiff brought a quiet title action, premising his superior title claim on the IRS's failure to give adequate notice, as defined by federal law. Id. at 311.  Defendant subsequently removed the case to federal court on the grounds that the plaintiff's claim of title depended on interpretation of a federal tax statute. Id.  at 310-11.

[7]  Unlike Grable the court in this case is not presented with only a single legal or factual issue that can be resolved by a determination of federal law.

Grable test carves out only a "special and small category" of cases out of state court jurisdiction over state-law claims. Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 699 (2006). Following suit, the Eleventh Circuit recently addressed the law in this Circuit regarding substantial federal question basis for federal question jurisdiction. See Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290 (11th Cir. 2008). In Adventure Outdoors, Inc., the Court concluded that the proper test of Section 1331 jurisdiction is whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 1295 (citing Grable, 545 U.S. at 314). The Court cautioned, however, that the test is not tantamount to a "general rule of exercising federal jurisdiction over state claims resting on federal ... statutory violations." Id. (citing Grable, 545 U.S. at 319). Rather, the Court noted that the cases exhibiting substantial federal questions will typically be those involving a "nearly pure issue of [federal] law," rather than those involving "fact-bound and situation-specific" contexts in which federal questions are enmeshed. Id. (citing Empire Healthchoice, 547 U.S. at 700-01).

In Citibank, N.A. v. Gumbs, 2007 WL 3491744 (N. D. Ga., November 6, 2007), the District Court for the Northern District of Georgia concluded that the Single Family Mortgage Foreclosure Act[8] does not provide a basis for removal to federal court. Although the court noted that the foreclosure at issue was not on behalf of HUD, the court reasoned that "even if the

---

[8] The Single Family Mortgage Foreclosure Act of 1994, 12 U.S.C.A. §§ 3751, *et seq.*, creates a uniform federal foreclosure remedy for single-family mortgages which are held by the Secretary of Housing and Urban Development (HUD) pursuant to Title I or Title II of the National Housing Act, or which secure loans obligated by the Secretary. This act is a "sister" to the MMFA.

foreclosure was on behalf of HUD, the Court is uncertain how Plaintiff's Fayette County dispossessory action would relate to the foreclosure procedures under the Single Family Mortgage Foreclosure Act. The Court's review of the Act has found no procedures relating to the dispossession of occupants of a foreclosed property. As a result, the Court finds that Plaintiff's dispossessory action is not based on the Single Family Mortgage Foreclosure Act. If the Act has any applicability, it appears to apply as a defense to Plaintiff's dispossessory action." Id. at * 1.

In order to determine whether the present case warrants federal jurisdiction, plaintiffs state law tort claims must be evaluated to determine whether they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," Grable, 545 U.S. at 314.  The court's analysis is tempered by the fact that the Supreme Court has emphasized that "Grable exemplifies" a "slim category" of cases.  Empire Healthchoice Assurance, Inc. v. McVay, 547 U.S. 677, 701 (2006).

It is undisputed that the foreclosure of the subject property was a HUD foreclosure performed pursuant to the MMFA.  However, plaintiffs note that the tortious acts alleged in the complaint occurred after the foreclosure of the mortgage and that neither plaintiff was a party to either the mortgage or the foreclosure.  Further, plaintiffs maintain that they are not challenging the validity of the foreclosure sale. [9]

---

[9] Defendants assert inconsistencies by plaintiffs on this point and argue that the claim for trespass would required a determination of rightful possession which would implicate the validity of the foreclosure.

Applying the factors set out by the Supreme Court in <u>Empire Healthchoice</u>,[10] the Court finds that the interpretation of federal law, if at all, is minimal.  As was the case in <u>Empire Health</u>, the dispute in this action is between private parties.  The federal issue, if any, will not be dispositive of all of plaintiffs' claims, which are "fact-bound and situation-specific." <u>Id.</u> at 700-01.  Merely raising a contested federal issue in a complaint will not necessarily confer federal jurisdiction.  <u>See</u> <u>Adventure Outdoors, Inc. v. Bloomberg</u>, 552 F.3d 1290, 1299 (11th Cir. 2008) ("Although the plaintiffs' complaint raises a contested federal issue, the nature of the dispute between the parties suggests that this issue does not meet <u>Grable's</u> substantiality requirement. <u>Grable</u> emphasized the importance of providing a federal forum for "substantial questions of federal law.")  <u>See also</u>  <u>Dunlap v. G & L Holding Group, Inc.</u>, 381 F.3d 1285 (11th Cir.2004) ( "The fact that a court must ... construe federal law to determine whether the plaintiff is entitled to relief will not confer federal subject matter jurisdiction....")  At most, defendants' are asserting the applicability of the MMFA as a possible defense to plaintiffs' allegations.  This is insufficient to support federal question jurisdiction.  <u>Hill v. Marston</u>, 13 F. 3d 1548, 1549 (11th Cir. 1994).  Even if a jury was required to apply federal law to reach its ultimate decision, that fact is not dispositive of the inquiry.  "[A]s the Supreme Court explained in <u>Grable</u>, the federal courts have rejected the "expansive view that mere need to apply federal law in a state-law claim

---

[10]  In <u>Empire</u>, the plaintiff, an insurance carrier that administered a health plan for federal employees under the Federal Employees Health Benefits Act, sued a former plan beneficiary for reimbursement of claims previously paid after the plan beneficiary recovered damages from a third party in the settlement of a state tort action relating to those claims.

The dispute in <u>Grable</u> centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." 547 U.S. at 700 In addition, <u>Grable</u> involved a "nearly pure issue of law." <u>Id.</u> (internal quotation marks omitted).

will suffice to open the 'arising under' door." Adventure Outdoors, 552 F.3d at 1300 (quoting

Grable, 545 U.S. at 313).

In addition to the MMFA, defendants argue that a resolution of this matter requires the

court to interpret certain HUD provisions.  However, HUD is involved only to the extent that the

mortgage was a HUD mortgage (with which plaintiffs were not involved).   In addition, the

validity of the leases turns primarily on state law.[11] See Bennett v. Southwest Airlines Co., 484

F.3d 907, 910 (7th Cir. 2007) (noting a fact-specific application of rules that come from both

federal and state law rather than a context-free inquiry into the meaning of a federal law, the

court held that it could not exercise jurisdiction over an Illinois state tort claim stemming from

an aviation accident); see also  Singh v. Duane Morris LLP, 538 F.3d 334, 339 (5th Cir.2008)

(finding federal jurisdiction inappropriate where "federal issue [did not require] resolution of an

important question of law" but was "predominantly one of fact").[12]

*Preemption*

Defendants also argue that the purpose and the legislative history surrounding the MMFA

make it clear that the causes of action pled in plaintiffs' complaint are completely preempted by

federal law.  Specifically, defendants contend that the crux of plaintiffs' complaint is based on

the allegedly defective foreclosure proceeding which implicates the MMFA and its foreclosure

---

[11]  Plaintiffs concede that even if the leases are valid, they would be so for no more than
one year from foreclosure as proscribed by the MMFA.

[12]  In Adventure Outdoors Inc., the Eleventh Circuit relied in part on Bennett and Singh
but noted that "[w]e do not read Bennett or Singh to say that only pure legal issues can trigger
substantial federal question jurisdiction, but rather that resolution of pure issues of federal law
provides the strongest basis for 'resort to the experience, solicitude, and hope of uniformity that
a federal forum offers on federal issues.' " Id. at 1299 (quoting Grable, 545 U.S. at 312).

provisions.

In Dunlap v. G & L Holding Group, Inc., 381 F.3d 1285 (11th Cir. 2004), the Eleventh

Circuit Court of Appeals explained that: "[c]omplete preemption occurs when federal law so

occupies a given field that a state-law claim is transformed into a claim 'arising under' federal

law.  In other words, "if a federal cause of action completely preempts a state cause of action any

complaint that comes within the scope of the federal cause of action necessarily 'arises under'

federal law." Id. at 1290. (citation and footnote omitted).  The Court cautioned that complete

preemption is a "narrowly drawn jurisdictional rule for assessing federal removal jurisdiction

when a complaint purports to raise only state law claims" and noted that "the Supreme Court has

identified only three statutes that completely preempt related state-law claims: (1) § 301 of the

Labor Management Relations Act, 29 U.S.C. § 185; (2) § 1132 of the Employee Retirement

Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; and (3) §§ 85 and 86 of the National

Bank Act, 12 U.S.C. § 21 et seq ." Id. at 1291 (citing Beneficial Nat'l Bank v. Anderson, 539

U.S. 1, 7-11 (2003)).  See Wood v. Option One Mortg. Corp., 580 F.Supp.2d 1248, 1260 (N. D.

Ala. 2008) (no preemption where nothing in RESPA requires plaintiffs to sue for violations of it

rather than for negligence and other state law claims.)

Defendants claim that while plaintiffs' complaint alleges claims of trespass, the MMFA

specifically provides that "[a] purchaser at a foreclosure sale held pursuant to this chapter shall

be entitled to possession upon passage of title to the mortgaged property . . . ." 12 U.S.C. §

3713(c) (emphasis added). Additionally, defendants note that plaintiffs allege that "the acts of

Defendants, in forcibly taking possession of the premises, are in derogation of Alabama Law,

which requires that a purchaser at a foreclosure honor the Lease Agreement on said

property." (Compl. ¶ 7.) However, under the MMFA, possession of the Property is "subject to an interest or interests senior to that of the mortgage and subject to the terms of any lease of a residential tenant for the remaining term of the lease or for one year, whichever period is shorter." 12 U.S.C. § 3713(c).

Contrary to defendants' assertions, it is not clear that Congress intended complete preemption beyond the foreclosure process.  Section 3701 entitled "Findings and Purpose" speaks "reduc[ing] unnecessary litigation by removing many foreclosures from the courts where they contribute to overcrowded calendars" and "creat[ing] a uniform Federal foreclosure remedy for multifamily mortgages.  One court has concluded that Congress,  in passing the Act, "did not chose to extend the new legislation beyond the foreclosure process... Thus ... the Act and its legislative history strongly suggest that Congress ... chose to preempt state law in only the relatively narrow area of multifamily mortgage foreclosure." Chicago Title Insurance Company v. Sherred Village Associates, 544 F.Supp. 320, 326 (D.Me. 1982), aff'd, 708 F.2d 804 (1st Cir. 1983) (citing 1981 U.S. Code Cong. & Ad. News 396, 532, 560, 1010, and 1074).   In that case, the court held that the aggrieved MMFA purchaser must look to state law to compel delivery of the possession of the property.  Id.

Thus, while the MMFA does provide for a  right of immediate possession, the statute does not set forth a definitive process by which a purchaser can compel delivery of possession. While the MMFA does preempt state law in the area of HUD foreclosures, it is unclear whether Congress intended to extend that preemption past that narrow area.  Accordingly, the court finds that plaintiffs' claims are not completely preempted. See Burns v. Windsor Ins. Co., 31 F.3d at 1095 ("where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor

of remand").

V.      Conclusion

        Based on the foregoing the undersigned does not find that the complaint presents a

substantial question of federal law under the MMFA.  The court further finds that federal law has

not completely preempted the laws of the State of Alabama on the issues raised and that this

court lacks subject matter jurisdiction.  Accordingly, it is the recommendation of the undersigned

that  this action be remanded to the Circuit Court of Mobile County, Alabama.

        DONE this the 24th day of June 2009.

                                                 /s/ Katherine P. Nelson
                                                **KATHERINE P. NELSON**
                                                **UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.